******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CURTIS D. DEANE *v.* AMY DAY KAHN ET AL.
(AC 31575)
(AC 31576)

Gruendel, Sheldon and Peters, Js.

*Argued September 17, 2013—officially released April 1, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Complex Litigation Docket, Hon. Joseph M.
Shortall, judge trial referee.)

*Sean P. Clark*, for the appellant in AC 31575 (defendant John Gorman).

*Lloyd L. Langhammer*, for the appellants in AC 31576
(named defendant et al.).

*Thor Holth*, for the appellee in both appeals
(plaintiff).

*Opinion*

SHELDON, J. In the early 1900s, Harriet Warner owned a large estate of land along the shore of the Connecticut River in Lyme. The estate was shaped roughly like a triangle, with its base running along the riverfront on the south side of the estate, where the river flows from west to east. The estate was accessible from the northeast via Brockway's Ferry Road, a public road that ran from northeast to southwest along the upper left or northwest side of the estate. As the road approached the river, however, near the southwest corner of the estate, it split into two branches, one of which continued southwestward while the other turned sharply to the east and continued eastward, parallel to the river, part way across the south side of the estate.

On January 19, 1935, Harriet Warner conveyed a fee simple interest in a portion of her estate lying directly on the river to Walter Hastings (1935 conveyance). The tract deeded to Hastings was located immediately to the east of and downstream from another riverfront tract, which Harriet Warner previously had conveyed to her brother-in-law, Robert Huey, in 1909.

Under the terms of Harriet Warner's deed to Walter Hastings (1935 deed), the tract conveyed to him was to be free of encumbrances, "except that a right of way is reserved in perpetuity across said tract along the route now in use." The 1935 deed contained no other language describing the location, direction, dimensions, uses or purposes of the right-of-way so reserved, or of "the route now in use" along which it was to run.

From the this 1935 conveyance from and, more particularly, from Warner's reservation of a right-of-way across the deeded tract, a dispute has now arisen among the present owners of that tract and of two other riverfront properties located to the east of and downstream from it, both of which were parts of the Warner estate at the time of the 1935 conveyance. In this action to quiet title, the plaintiff, Curtis D. Deane, who now owns the easternmost of the three properties (Deane property), claims that he has the right to access the southern, riverfront portion of his sloping property from the west, across: (1) the deeded tract, which is now owned by the defendant John Gorman (Gorman property), over which the plaintiff claims a right-of-way pursuant to the 1935 deed; and (2) the intervening property lying directly to the east of and downstream from the Gorman property and directly to the west of and upstream from his own property, which is now owned by the defendant Amy Day Kahn (Kahn property), over which the plaintiff claims an easement by necessity.[1]

In a thorough memorandum of decision, the trial court concluded, inter alia, that the plaintiff has an easement over the Gorman property by virtue of the 1935 deed and an easement by necessity over the Kahn

property, which arose in 1960 when Harriet Warner's daughter, Musa Warner Caples, who then owned the eastern portion of her mother's former estate, which included both the Deane property and the Kahn property, divided those properties into separate tracts and conveyed them, respectively, to Charles Sreboff and Marion Sreboff (Sreboffs).[2] Upon reaching the foregoing conclusions, the court went on to rule that "the scope of the deeded easement over the Gorman property and the easement by necessity over the Kahn property should be defined in identical terms," which it then described in great detail, specifying its location on the burdened properties, its dimensions and its scope, including both the purposes for which and the time and manner in which it could be used.[3]

On appeal from the trial court's judgment in favor of the plaintiff, the defendants raise several claims of error. Gorman claims initially that the plaintiff did not meet his burden of proving the location, nature, scope and purpose of the easement allegedly created over his property by the 1935 conveyance. Because the plaintiff's claim of an easement over the Gorman property stems from Harriet Warner's reservation of a right-of-way across that property in 1935, Gorman argues that that claim is defeated by that failure of proof. Gorman further claims that, even if the plaintiff could meet his burden of proving that Harriet Warner created an easement appurtenant to her estate running across his property along the riverfront, any such easement was extinguished as to the Deane property in 1960, when Caples severed the Deane property from the Kahn property, and from her own property, and separately conveyed them to the Sreboffs, as a result of which the Deane property no longer abutted the Gorman property. The trial court agreed with Gorman on this aspect of his claim, but nonetheless determined that an easement by necessity arose over the Kahn property in 1960 as a result of Caples' separate conveyances to the Sreboffs in order to effectuate what it found to have been the intended transfer of the claimed riverfront easement over the Gorman property to Charles Sreboff. Gorman also challenges the court's finding that the plaintiff has an easement by necessity over the Kahn property on the grounds that no reasonable necessity existed for the creation of such an easement at the time of its alleged creation, and, even if it did, that the court's orders defining the scope of that easement are overly burdensome to the Gorman property and much broader than necessary to accomplish any legitimate purpose supported by the record in this case. Kahn joins Gorman in claiming that the court erred in holding that the plaintiff has an easement by necessity over her property, because the plaintiff failed to establish the existence of any necessity for such an easement at the time of the 1960 conveyances of the Kahn and Deane properties to the Sreboffs. The essential basis for her

argument on this issue is that, from the moment of its conveyance to Charles Sreboff, the Deane property "had road frontage [and] additional access via a navigable waterway." Without any need for outside access to the Deane property, the only claimed purposes for creating an easement by necessity across her property—"to [enable the owners of the Deane property to] perform minimal lawn maintenance [on the lower portion of that property] and . . . [to take] leisure walks"—were too insubstantial to warrant burdening her property in the manner proposed.

We agree with Gorman that the plaintiff failed to prove, either by the language of the 1935 deed or by the circumstances existing at the time of its execution, that the 1935 deed created an easement appurtenant to Harriet Warner's property across the Gorman property. We also agree with the defendants that the plaintiff failed to prove that he is entitled to an easement by necessity over the Kahn property, either by showing that his property would be landlocked without it, which it would not be, or by showing that the parties intended to create such an easement at the time of its alleged creation in 1960, based upon evidence of the necessity for or the use of the claimed easement at that time. Accordingly, we reverse the judgment of the trial court.

I

HISTORY

By way of background, we begin by reviewing the history of the land here at issue. In the early 1900s, Harriet Warner was the owner of a large estate along the shore of the Connecticut River. That estate would gradually be split into several separate parcels, including those parcels that are herein referenced as the Deane, Kahn and Gorman properties. In 1909, Harriet Warner conveyed a small portion of her property along the riverfront to Huey, who was married to her sister. In 1935, by deed, Harriet Warner conveyed the southern portion of what is now the Gorman property, which is immediately to the east of and downstream from the Huey property, to Walter Hastings. The habendum clause of the 1935 deed from Harriet Warner to Walter Hastings provided that "a right of way is reserved in perpetuity across said tract along the route now in use."[4] That deed contained no other information regarding the location, size, purpose, nature or scope of that right-of-way.

In 1936, Harriet Warner conveyed the remainder of her estate to her children, Hester Warner and Caples. Although Harriet Warner reserved a life use of the property so conveyed for herself, her deeds to her daughters made no mention of the right-of-way across the Gorman property reserved in the 1935 deed. On December 30, 1936, Hester Warner and Caples split the property between themselves, Caples conveying the western por-

tion of the property to Hester Warner and Hester Warner conveying the eastern portion of the property, including the Kahn and Deane properties, to Caples.

In 1938, the Gorman property was transferred by certificate of devise from the estate of Walter Hastings to William Hastings, whereafter, in 1945, it was conveyed by William Hastings to Kenneth Johnson. On October 30, 1945, Johnson added to his estate by obtaining a small parcel along its northern boundary from Caples. No mention of the 1935 right-of-way was made in any of the above-described conveyances of the Gorman property.

On February 8, 1955, Johnson conveyed the Gorman property to the Sreboffs. The 1955 deed from Johnson to the Sreboffs mentioned the right-of-way reserved by the 1935 conveyance for the first time since that date. It provided, more particularly, that the property so conveyed was subject: "To a right of way reserved in deed recorded in Volume 51 at page 25 of the Lyme land records in perpetuity across the land above described as parcel 1 and along the route now in use."[5] There has been no other reference to the 1935 reservation in any other deed in the chain of title by which the Gorman property ultimately descended to Gorman from the Sreboffs, including: the deed from Marion Sreboff to herself and her daughter, Carole Schmitt, on December 21, 1977;[6] the deed from Marion Sreboff and Schmitt to Elliott and Linda Packman (Packmans) on April 30, 1982; the deed from the Packmans to Robert and Susan Wright (Wrights) on March 1, 1984; and the deed from the Wrights to Gorman on April 18, 1986.[7]

On July 6, 1960, Caples simultaneously conveyed a portion of her property that would later become the Kahn property to Marion Sreboff and an adjoining parcel directly to the east of it that would later become the Deane property to Charles Sreboff. The deed to Marion Sreboff created a common driveway easement and a mutual boundary easement to provide the Kahn property with access over the Deane property to and from Brockway's Ferry Road.[8] On January 14, 1970, Marion Sreboff conveyed the Kahn property to Frank and Denise Heineman (Heinemans). On May 13, 1981, Marion Sreboff and her daughter, Schmitt, who then jointly owned the Gorman property, granted the Heinemans a right-of-way over the riverfront portion of that property, "along that strip of land which is the easterly exten[s]ion of the ancient private dirt road, as it now lays, across" the property. On November 17, 1986, the Heinemans conveyed the Kahn property to Robert Kahn and Amy Day Kahn, although on February 7, 1990, Robert Kahn released his one-half interest in the property to Amy Day Kahn. In none of these deeds in the chain of title to the Kahn property, from Harriet Warner to Amy Day Kahn, is there any reference to the 1935 reservation. In all of them, however, except for Robert

Kahn's release, the Kahn property is conveyed "with the appurtenances thereof."

On November 15, 1961, Charles Sreboff conveyed what is now the Deane property to Howard Heffernan, subject to the common driveway and mutual boundary easements in favor of the Kahn property. On August 6, 1976, Heffernan conveyed the property to William Blundin, who gradually transferred portions of his interest in that property to the plaintiff. On April 18, 1996, Blundin conveyed the last of his remaining interest in the property to the plaintiff, making the plaintiff its sole owner. All conveyances of the Deane property were specifically made subject to the common driveway and mutual boundary easements created by Caples in favor of the Kahn property when she first separated the Kahn property from the Deane property and sold them respectively to Marion Sreboff and Charles Sreboff. In none of the deeds to the Deane property, however, is there any mention of the right-of-way reserved by Harriet Warner over what is now the Gorman property in 1935. In all of those deeds, however, the Deane property is conveyed "with the appurtenances thereof."

On August 20, 2001, the plaintiff filed this action seeking, inter alia, to quiet title to his alleged right-of-way across the Gorman and Kahn properties to access the lower portion of his own property, and to enjoin the defendants from interfering with his quiet enjoyment and use of that right-of-way. The trial court concluded that the plaintiff has a right by deed to pass along the riverfront over the Gorman property and a right by necessity to pass over the Kahn property. The defendants challenge both of those conclusions.

II

CLAIM OF EASEMENT BY DEED

We begin with the plaintiff's claim that he has an easement by deed over the Gorman property, which originated with the 1935 conveyance. The trial court found, "from all of the evidence, that the language [Harriet] Warner used, in light of the surrounding circumstances in 1935, was sufficient to identify the dominant estate as the property she retained along the riverfront, direct access to which was provided via the existing public/private route shown on [Gerald] Stefon's map."[9] Gorman claims that the plaintiff failed to prove the location, nature, scope and purpose of the easement purportedly created by Harriet Warner in 1935. Specifically, Gorman claims that the plaintiff failed to identify either the precise location of the easement claimed to have been created by the 1935 deed or the intended use of the easement. Consequently, Gorman contends, the court erred in concluding that the plaintiff enjoys an easement by deed along the riverfront over the Gorman property. We agree.

"[T]he scope of an easement is what its holder may

do with it, the purposes for which it may be used. . . . Typically, to discern the scope of an easement, the deeds, maps and recorded instruments that created the easement must be considered in light of the surrounding circumstances to determine [its] nature and extent . . . . In a case . . . however, [in which] . . . the [deed] provides no guidance as to the type of use contemplated, the scope of the intended easement rests on inference from the circumstances. 4 R. Powell, Real Property (2010) § 34.12, p. 34-147; see also 1 Restatement (Third), Property, Servitudes § 4.1, comment (a), p. 498 (2000) (in interpreting servitudes created without an expression of intention by the parties, the relevant focus of inquiry is on the expectations the circumstances should reasonably have engendered in the parties)." (Citations omitted; internal quotation marks omitted.) *McBurney* v. *Paquin*, 302 Conn. 359, 367, 28 A.3d 272 (2011).

"The fact that servitudes are intended to bind successors to interests in the land, as well as the contracting parties, and are generally intended to last for an indefinite period of time, lends increased importance to the writing because it is often the primary source of information available to a prospective purchaser of the land. The language should be interpreted to accord with the meaning an ordinary purchaser would ascribe to it in the context of the parcels of land involved. Searching for a particular meaning adopted by the creating parties is generally inappropriate because the creating parties intended to bind and benefit successors for whom the written record will provide the primary evidence of the servitude's meaning." 1 Restatement (Third), Property, Servitudes § 4.1, comment d, pp. 499–500 (2000).

"The language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent. . . . [T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . In determining the scope of an express easement, the language of the grant is paramount in discerning the parties' intent. In order to resolve ambiguities in the language, however, the situation and circumstances existing at the time the easement was created may also be considered." (Internal quotation marks omitted.) *Hurlburt* v. *DeRosa*, 137 Conn. App. 463, 470, 49 A.3d 249 (2012).

Consistent with the foregoing rules and principles, our Supreme Court has held: "When a grant of a right of way does not fix the exact route it is to follow, its location is established, in accord with the reasonable convenience of the dominant and servient owners, by the practical location and use by the grantee, acquiesced in by the grantor at the time." *Gaffney* v. *Pesce*,

144 Conn. 17, 19, 126 A.2d 926 (1956). The burden of proof rests upon the party who is claiming the right-of-way to show the existence of all facts necessary to establish said right-of-way. *Branch* v. *Occhionero*, 239 Conn. 199, 205–206, 681 A.2d 306 (1996).

We thus begin with an examination of the deed itself. The 1935 deed from Harriet Warner to Walter Hastings reserved a "right of way . . . in perpetuity . . . along the route now in use" across the Gorman property. The deed does not contain any additional information regarding that route.[10] It thus is devoid of any measurements or any indication as to the location of the route. Hence, although the contested easement has been referred to by the parties and the trial court as the "riverfront easement," there is nothing in the 1935 deed that identifies the purported right-of-way as running along the riverfront.[11] In fact, there is nothing in the deed from which to infer even the approximate location of that route, much less to support a finding that the route crossed the lower portion of the Gorman property along the riverfront.[12] Likewise, the deed is silent as to the intended use or purpose of the right-of-way or of "the route now in use" to which the deed refers.[13]

Not only is the deed itself silent as to the location and scope of the right-of-way reserved in Harriet Warner's 1935 deed to Walter Hastings, but none of the evidence relied upon by the trial court sheds light on circumstances surrounding the execution of the deed in 1935 from which such details can be inferred.[14] The court specifically credited the testimony of "Robert Sutton, who has lived in the immediate area of the properties at issue all his life and testified that he had crossed over the Gorman and Kahn properties via the riverfront easement 'thousands and thousands of times' and Carole Schmitt, who lived there in the late 1950s and 1960s when her parents, Marion and Charles Sreboff, owned the Gorman, Kahn and Deane properties." Neither Sutton nor Schmitt, however, testified as to the circumstances surrounding the 1935 conveyance.[15] In fact, no evidence whatsoever was presented as to use of the purported right-of-way in 1935. In the absence of any evidence regarding the location and scope of the claimed easement, the plaintiff failed to prove that he has a deeded easement over the Gorman property.[16]

Even if the plaintiff had presented sufficient evidence to establish that in 1935, Harriet Warner created an easement appurtenant to her property, including land that later became the Deane and Kahn properties, along the riverfront over the Gorman property, he then had the burden of proving that that right-of-way passed to his property. As previously noted, in 1960, Caples was the owner of a parcel of land that included, in part, the Deane and Kahn properties. In 1960, Caples conveyed the Kahn property, which lay directly to the east and north of the Gorman property, to Marion Sreboff; and

conveyed the Deane property, which lay directly to the east of the Kahn property property, to Charles Sreboff. The trial court concluded, and we agree, that "Caples' severance of the dominant estate in this manner extinguished the Deane property's right to use the riverfront easement over the Gorman property unless the new owner of it, Charles Sreboff, had a legal right of passage over the intervening land owned by Marion Sreboff." See *Stiefel* v. *Lindemann*, 33 Conn. App. 799, 813, 638 A.2d 642 ("[i]t is a well established principle that where an easement is appurtenant to any part of a dominant estate, and the estate is subsequently divided into parcels, each parcel may use the easement as long as the easement is applicable to the new parcel . . . (1) if the easement directly abuts on the new parcel, or (2) if the owner of the new parcel can reach the easement by traveling over the intervening land over which the owner has a legal right of passage" [citation omitted]), cert. denied, 229 Conn. 914, 642 A.2d 1211 (1994).

### III

### CLAIM OF EASEMENT BY NECESSITY

The trial court further concluded, however, that, "at the time of the conveyance by Musa Caples to Charles Sreboff, an easement by necessity was created over the property she simultaneously deeded to Marion Sreboff, now the Kahn property." (Footnote omitted.) The court found that "the surrounding circumstances in 1960 were the same as they are today: . . . Caples was conveying to [Charles] Sreboff a tract of land, the lower portion of which along the riverfront was inaccessible to vehicular traffic from the upper portion due to a steep slope separating the two, thus precluding its reasonable and productive use and development without access to the road via the riverfront easement. Even access by foot was problematic due to the steepness of the slope." In so concluding, the court found that, by employing the language "with the appurtenances thereof" in the deed of conveyance to Charles Sreboff, Caples had indicated an intent to transfer to Charles Sreboff as well as Marion Sreboff the benefit of the riverfront easement over the Gorman property, and that the "recognition of an easement by necessity is both consonant with the intent of Musa Caples when she conveyed the Deane property to Charles Sreboff in 1960 and reasonably necessary to provide [the plaintiff] with the beneficial enjoyment of his property." We are not persuaded.

"The requirements for an easement by necessity are rooted in our common law. . . . [A]n easement by necessity will be imposed where a conveyance by the grantor leaves the grantee with a parcel inaccessible save over the lands of the grantor, or where the grantor retains an adjoining parcel which he can reach only through the lands conveyed to the grantee. . . . [T]o fulfill the element of necessity, the law may be satisfied with less than the absolute need of the party claiming

the right of way. The necessity element need only be a reasonable one. . . . Although the requirements for an easement by necessity once included a showing of unity of ownership . . . our Supreme Court has eliminated that requirement. . . . Moreover, although it is true that [a]n easement of necessity may occur when a parcel has become landlocked from outside access such that the owner would have no reasonable means of ingress or egress except over lands promised by another and a right-of-way is necessary for the enjoyment of the parcel . . . [t]he inverse also is true; that is, a common-law right-of-way based on necessity expires when the owner of a dominant estate acquires access to a public or private road through another means." (Citations omitted; internal quotation marks omitted.) *Montanaro* v. *Aspetuck Land Trust, Inc.*, 137 Conn. App. 1, 27–28, 48 A.3d 107, cert. denied, 307 Conn. 932, 56 A.3d 715 (2012). "The basis of the right is the presumption of a grant arising from the circumstances of the case. If the situation is such that the landowner has absolutely no access to his property except across the land of his grantor, the presumption is clear and the right undoubted. If he has such access over other land of his own, the mere fact that such access is inconvenient or expensive will not raise the presumption of a grant of a more convenient way over the land of his grantor. It may be, however, that, while access to the property is not absolutely cut off, the circumstances of the case are such that the means of access available would not afford the landowner any real beneficial enjoyment of his property. Such a situation would arise when the expense of making the means of access available would exceed the entire value of the property to which access was sought. Such a means of access would be no better than none at all, and there would seem to be equal reason for presuming a grant under such circumstances as in the case where there was no access. Although there are cases which hold that the way must be one of strict necessity, the weight of authority supports what seems to us to be the better rule—that the necessity need only to be reasonable one. . . .

"It has been said that the test of necessity is whether the party claiming the right can at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute. . . . In most of the cases which have held that a way of necessity does not exist when a man can get to his own property through his own land, the way was sought on the grounds of convenience and economy only." (Citations omitted.) *Marshall* v. *Martin*, 107 Conn. 32, 37–38, 139 A. 348 (1927). "[T]he necessity does not create the way, but merely furnishes evidence as to the real intention of the parties; [f]or the law will not presume that it was the intention of the parties that one should convey land to the other in such manner that the grantee could derive no benefit from the conveyance; nor that he should so convey a

portion as to deprive himself of the enjoyment of the remainder. The law, under such circumstances, will give effect to the grant according to the presumed intent of the parties. A way of this kind is limited by the necessity which creates it." (Internal quotation marks omitted.) *Robinson* v. *Clapp*, 65 Conn. 365, 385, 32 A. 939 (1895). "[T]he element of necessity has been rather strictly construed and made to depend on the situation of both parties, the nature and adaptability of the property, and surrounding circumstances." *Hollywyle Assn., Inc.* v. *Hollister*, 164 Conn. 389, 401, 324 A.2d 247 (1973). The extent of necessity is determined by examining the circumstances which existed at the time of the conveyance, in addition to the use being made by the dominant estate at that time. *McBurney* v. *Paquin*, 302 Conn. 359, 380, 28 A.3d 272 (2011). "Evidence of present, or relatively recent, actual use of the easement bears little relation to what was considered reasonably necessary for its use and enjoyment [at the time of conveyance]." Id.

Here, although the court acknowledged that the plaintiff's property is not landlocked, it found that, due to the topography of his land, the lower, riverfront portion of it is "of little beneficial use to him in the absence of access over the riverfront easement and the Kahn property."[17] The court thus granted an easement by necessity over the Kahn property, explaining: "[T]his is not a case where access to the lower portion from the upper portion of [the plaintiff's] property is merely inconvenient. . . . Without direct vehicular access from the road [along the riverfront, the plaintiff] has been and will continue to be unable to conduct ordinary maintenance of the lower portion of his property on a regular basis, to deal with damage to that portion caused by unusual events, such as a severe storm or flooding, to maintain his well or seawall or to construct a beach or boat dock on the river."[18]

In so ruling, the trial court did not make any findings as to the use of the right-of-way at the time of the 1960 conveyances.[19] The court simply found that the surrounding circumstances in 1960 were the same as they are today, in that the steepness of the slope of the Deane property prevented vehicular traffic from the upper portion to the lower portion of that property and made pedestrian traffic to that area problematic.[20] Although the court then determined that those hindrances "precluded the reasonable and productive use and development" of the lower portion of the Deane property, the court made no findings as to why this was the case in 1960. The court determined that direct vehicular access to the lower portion of the property was necessary for the plaintiff, but made no findings as to the existence of the need for vehicular access at the time of the purported creation of the easement by necessity.[21] In fact, the court made no findings whatsoever as to the reasonable necessity to access the lower

portion of the Deane property in 1960.

Moreover, our review of the record reveals that although there was testimony regarding the use at one time of a route across the Gorman property to deliver groceries to the Mitchell house, that use ceased when the Mitchell house was destroyed in the early 1950s. After that time, until the Sreboffs built a house for Schmitt on the Kahn property, there were no other structures on either the Kahn property or the Deane property, both of which were "pretty much overgrown." There was also testimony that the Sreboffs and Schmitt used the area of the claimed right-of-way on the Kahn property to park their vehicles or to turn their vehicles around to return to Brockway's Ferry Road in the late 1950s. Schmitt also testified that her children would sometimes play in the area on the lower portion of the Kahn property. There was no evidence, however, that the claimed right-of-way was ever used to access the lower portion of the Deane property in 1960.[22] Thus, not only did the plaintiff fail to prove the necessity of the easement in 1960, but he failed to show any use of it at that time.[23] In the absence of such evidence, we conclude that the trial court erred in ruling that the plaintiff, as the owner of the Deane property, is entitled to an easement by necessity over the Kahn property.[24]

The judgment is reversed as to the court's determination of the existence of an easement over the Kahn property in count three of the plaintiff's complaint, and over the Gorman property in count eight of the plaintiff's complaint and the case is remanded with direction to render judgment in favor of the defendants on those counts. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] We refer in this opinion to John Gorman, Amy Day Kahn, and Robert Kahn collectively as the defendants, and to them individually by name. The plaintiff alleges in count three of the operative complaint that he has an easement by necessity over the Kahn property and alleges in count eight that he has an easement by grant over the Gorman property. The court rendered judgment in favor of the plaintiff on these counts. In AC 31575, Gorman primarily challenges the judgment with respect to count eight. In AC 31576, Amy Day Kahn and Robert Kahn challenge the judgment with respect to count three.

[2] There are two other easements that involve the Kahn and Deane properties, which were addressed by the trial court. The court's determinations as to those easements have not been challenged on appeal.

[3] The court held: "There shall be an easement 13 feet, 8 inches in width, which shall run from the west to east over the Gorman property and the Kahn property and into the Deane property, terminating on the Deane property. The easement shall follow the course of the gravel path visible on the ground directly in front of the residence located on the Gorman property . . . and shall run along the foot of the slope on the Kahn property. This easement is for the purpose of giving owners of the Deane property a nonexclusive means of gaining access on foot and in vehicles from that property to and from the road, and they may pass and repass along the easement for that purpose. The vehicles which may use this easement are those used for personal transportation and for the transport of supplies and equipment necessary for the maintenance and development of the lower portion of the Deane property. This easement may be used for traffic on foot and in vehicles used for personal transportation without limitation, except that no such use shall be made of the easement from 12:00 midnight on Saturday until 9:00 a.m. on Monday. The easement may be used for

traffic in vehicles used for transportation of supplies and equipment without limitation, except that no such use shall be made of the easement from 5:00 p.m. on Friday until 9:00 a.m. on Monday, and provided that any such use shall be preceded by at least forty-eight hours written notice to Mr. Gorman and Mrs. Kahn. While using the easement, [the plaintiff] and any persons in his company or on his behalf shall do so in such a manner as not to disturb the peaceful enjoyment of their property by Mr. Gorman and Mrs. Kahn and members of their families or damage or destroy the property of Mr. Gorman or Mrs. Kahn or interfere with the use of their property by Mr. Gorman or Mrs. Kahn. Any use of said easement by [the plaintiff] or others in his company or on his behalf shall be at their own risk and peril, and the owners of the Gorman and Kahn properties shall be in no way liable for any injury to person or damage to property suffered by reason of any such use. The owners of the Gorman and Kahn properties shall have no obligation to maintain said easement in any particular manner or condition."

[4] We note that Harriet Warner did not reserve any right-of-way over the parcel of land that she had conveyed to Huey in 1909.

[5] The 1935 deed from Harriet Warner to Walter Hastings is recorded in Volume 51 at page 25, to which the 1955 deed makes reference. No party contends that the 1955 deed from Johnson to the Sreboffs created a new right-of-way.

[6] When Charles Sreboff died on November 29, 1972, Marion Sreboff took title to this property, which they previously had owned jointly. We note that Marion Sreboff subsequently married Elwood Maynard. For consistency of reference, we will refer to her as Marion Sreboff throughout this opinion.

[7] The Wrights' conveyance to Gorman is, however, subject to a right-of-way over the portion of the property granted by the Sreboffs to Frank and Denise Heineman in 1981, which will be discussed more fully herein.

[8] As the trial court found: "The[se two easements] created as one 'perpetual' right-of-way twenty feet in width running 538 feet south from the road, then west to the land conveyed to [Marion] Srebroff (providing access from the road to [Marion] Srebroff's property) and then 350 feet southwesterly along and within the boundary between the property conveyed to [Marion] Srebroff and the property conveyed to [Charles] Srebroff. The purpose of the entire easement is given as 'for passage on foot and in vehicles and for the installation of public utility services for the benefit of the land herein conveyed (to [Marion] Srebroff) in common with other land of the grantor (Musa Warner Caples) conveyed or to be conveyed to Charles M. Srebroff.' "

[9] Gerald Stefon, who is a surveyor and title searcher, testified at trial and produced a map of the area at issue, which was admitted into evidence as defendants' exhibit 516.

[10] No map of the deeded tract accompanied the deed.

[11] Indeed, in 1909, when Harriet Warner conveyed a portion of her land, which portion was immediately to the west of the now Gorman property, to Huey, she did not reserve a right-of-way over that tract. The absence of such a right-of-way would, as Gorman contends, suggest that any right-of-way reserved over his property would not have been along the riverfront because it would be cutoff at the boundary between his property and the Huey property. The trial court dismissed that notion, however, on the basis that because Huey and Harriet Warner were related by marriage, it is a fair inference that she did not need an easement to cross over her relative's land. In the absence of any evidence as to the circumstances existing either at the times of either the 1909 or 1935 conveyances, there is no basis in the record for such an inference. We further note that if Harriet Warner had not reserved a right-of-way over the Huey property because she was related to him, any easement that she created in the 1935 deed was an easement in gross for her personal use and benefit, not an easement appurtenant to her estate, which could be conveyed to others as an appurtenance of her estate.

[12] Because Harriet Warner owned only one large parcel of land in the pertinent location at that time, we may fairly presume that she intended that entire parcel to be the dominant estate to which the benefit of the right-of-way would belong. That presumption, however, lends no clarity to her intention in reserving the right-of-way in the 1935 deed. Because Harriet Warner's remaining property, as a result of the conveyance, abutted the deeded tract on more than one side—specifically, the north and the east— it is difficult to ascertain the precise location of the purported right-of-way if, as the deed suggested, it was to lead "across" the tract along the route now in use, unless it proceeded from the north side to the east side or vice versa.

Indeed, the defendants contended at trial that Harriet Warner might have intended to create an easement from the Gorman property through a gate and along a path generally northward across the upper portion of the property she retained, allowing her to traverse from property she retained northwest of the Gorman property to property she retained southeast of the Gorman property. The trial court rejected that argument, stating: "This is speculation supported by no contemporary evidence. There is no apparent reason why [Harriet] Warner would have wanted to retain such a right-of-way: The property she retained was mostly undeveloped, and she did not live there. All of the property she retained was contiguous. Had she any reason to, she could have gone from the property north of the Gorman property to the property east of it simply by walking across her own property. If she wanted to avoid traversing the slope, she could have used the established route along the river to access her riverfront properties. Finally, Carole Schmitt, who testified that in the 1960s she used such a path to walk from her house on the Kahn property downhill to her parents' house on the Gorman property, also testified that there was no indication that such a path was in existence before that, and that she wore it down in her travels back and forth." In the absence of any evidence as to the location or purpose of the "route now in use" in 1935, the trial court's findings as to the right-of-way reserved by Harriet Warner are no less speculative.

[13] Although the court found that there was a public road leading from Brockway's Ferry Road along the riverfront, and that "the obvious purpose of this road was to provide easy access to certain residential and commercial premises along the water," there was no evidence that said road represented the "route" referenced by Harriet Warner in 1935.

It is noteworthy that the court found that there was "a private path extending from the public road in the same easterly direction along the riverfront and continuing through the Gorman property, stopping at the boundary with the Kahn property." If this path stopped at the western boundary of the Kahn property, it would have been of no benefit to what is now the Deane property.

[14] The court noted the language utilized in 1981 when Marion Sreboff and Schmitt granted the Heinemans an easement over the Gorman property. The court construed that conveyance as "persuasive evidence that the 'route' of the easement reserved by [Harriet] Warner was understood both before and after her reservation to be along the shore of the Connecticut River eastward from the road." The court noted that "the description of the location and purpose of the right-of-way to the Heinemans is relevant to the location of the 'route now in use' referred to in [Harriet] Warner's 1935 reservation." The court further explained, however, that "[t]he grant of the right-of-way . . . was unnecessary because the Heinemans already possessed an easement over the Gorman property by virtue of [Harriet] Warner's reservation." The court's reasoning in this regard is problematic for two reasons. First, why would Marion Sreboff grant the Heinemans an easement if she believed that one already existed? The fact that Marion Sreboff granted the Heinemans an easement is less probative of an understanding of an existing easement and is, in fact, evidence of the belief that no such easement existed until Marion Sreboff herself created it. Second, and more fundamentally however, is that the court improperly considered the creation of an easement that was granted forty-six years after Harriet Warner's reservation in 1935 as evidence of the scope and intention of that reservation.

[15] The court relied on testimony that the right-of-way reserved by Harriet Warner in 1935 was used to access a dwelling located on the lower, riverfront portion of the Deane property. The record reflects that that house was occupied by Fannie Mitchell, that the riverfront route was used regularly to bring groceries and other supplies to that house in the 1940s and that the house was torn down in the early 1950s. There was no evidence regarding the nature of the relationship between Harriet Warner and Mitchell; nor was there any evidence that Harriet Warner used the right-of-way to access that dwelling. Harriet Warner never lived on either the Kahn or the Deane properties. There was, in fact, no evidence that said dwelling existed in 1935. Indeed, plaintiff's counsel acknowledged at trial that no testimony had been presented that there was a residence on the lower portion of what is now the plaintiff's property in 1935.

[16] Because the plaintiff has failed to prove the location or intended purpose of the easement purportedly created by Harriet Warner in 1935, Gorman contends, and we agree, that he has also failed to prove whether the easement was appurtenant to the land. "If an easement is created to benefit and does benefit the possessor of the land in his use of the land, the benefit of that

easement is appurtenant to the land. The land is being benefited by the easement in the neighboring property. . . . An important characteristic of appurtenant easements is that they continue in the respective properties, rather than being merely personal rights of the parties involved. The easement's benefit or its burden passes with every conveyance affecting either the servient or dominant property." (Internal quotation marks omitted.) *Kepple* v. *Dohrmann*, 141 Conn. App. 238, 249–50, 60 A.3d 1031 (2013). "It is well established that where the reservation creating an easement does not mention the heirs and assigns of the grantee, a presumption exists that the grantor and grantee intended the right-of-way to be in gross." *Stiefel* v. *Lindemann*, 33 Conn. App. 799, 806, 638 A.2d 642, cert. denied, 229 Conn. 914, 642 A.2d 1211 (1994). Whether the covenants' burdens run with the land is, primarily, a question of the parties' intent. *Carlson* v. *Libby*, 137 Conn. 362, 367, 77 A.2d 332 (1950) ("[w]hether a promise with respect to the use of land is a covenant real as distinguished from a personal covenant depends upon the intent of the parties to the promise, to be determined in the light of the attendant circumstances"); see *Pulver* v. *Mascolo*, 155 Conn. 644, 649, 237 A.2d 97 (1967) ("[i]n the determination of the meaning in which words in a restrictive covenant are used, the controlling factor, when discovered, is the expressed intent"). In finding that Harriet Warner created an appurtenant easement in 1935, the court misplaced the burden of proof on the defendants when it stated that, "the defendants have offered no reason why Mrs. Warner would have wanted to retain an easement over the Gorman property for herself alone, and the court can conceive of none." As stated, there is a presumption that all easements are in gross and the burden is on the party claiming an easement to rebut that presumption. Because the plaintiff failed to present any evidence as to the location or use of the easement, which is fatal to his claim of a deeded easement over the Gorman property, we need not address the issue of whether the phrase "in perpetuity" is sufficient to establish an appurtenant easement.

[17] The court noted that no evidence of the actual cost of decreasing the slope of the plaintiff's property was offered, but based upon its own viewing of the property, the court inferred "that the cost would be very substantial." The court also noted the plaintiff's testimony that the absence of the riverfront easement would cause a diminution in the value of his property in the amount of $500,000. Although the court noted that the plaintiff's testimony in that regard was self-serving, and that no expert testimony had been offered as to said financial impact on the plaintiff's property, the court relied upon its own "general knowledge of the value of property with direct access to the river and its view of the Deane property" in concluding that "the riverfront easement is of great value to the Deane property."

[18] In light of the limited nature of the court's finding of necessity, we are perplexed by its ruling that the easement can be used "for traffic on foot and in vehicles used for personal transportation *without limitation* . . . ." (Emphasis added.)

[19] As noted herein, when Caples deeded the now Kahn property to Marion Sreboff in 1960, she created the common driveway and mutual boundary easements in order to afford that property access to Brockway's Ferry Road. The express creation of these easements by the parties can be construed as evidence that they would have expressly provided for access along the riverfront had they thought that such access was necessary.

[20] In his brief to this court, the plaintiff states that his use of the riverfront easement is "predominantly for passage on foot." Because it is undisputed that the plaintiff has stairs connecting the upper and lower portions of his property, which facilitate his pedestrian access to the lower portion of his property, we are further puzzled by his claim of necessity to access his property by crossing that of his neighbors.

[21] It is also noteworthy that by virtue of the two 1960 conveyances, the entire area of the purported riverfront easement was then owned by then-married Marion Sreboff and Charles Sreboff, jointly as to the Gorman property and then individually as to the Kahn and Deane properties. Thus, not only was there no evidence of necessity to access the lower portion of the Deane property via the riverfront easement in 1960, but because the land to the west of that property was owned by the same parties, there presumably would be no necessity to create such a right.

[22] We note that none of these uses are even similar to the activities for which the plaintiff currently claiming that access to the lower portion of his property through that of his neighbors is necessary. The plaintiff claims that such access is necessary "for several reasons, including, but not limited to: motor vehicle and lawn equipment access; grounds maintenance and

improvement; preventative maintenance against corrosion and deposits of debris along the shoreline; fire department access to the Connecticut River to pump water in the event of a fire at my home or those of my neighbors; convenient pedestrian access to neighboring properties located to the west of my property; boat launching and retrieval; prospective dock usage; handicapped access."

[23] To be sure, however, evidence of use does not constitute evidence of necessity.

[24] The plaintiff claims that the court's judgment granting an easement over the Kahn property may be affirmed on the alternative ground that "the same facts found by the [trial] court with respect to the easement by necessity would also support a finding of easement by implication." "In this state, the law regarding easements by implication arising out of the severance of title of two adjoining or commonly owned properties is well settled. Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership . . . there arises by implication of law a . . . reservation of the right to continue such use. . . . [I]n so far as necessity is significant it is sufficient if the easement is highly convenient and beneficial for the enjoyment of the dominant estate." (Internal quotation marks omitted.) *Schultz* v. *Barker*, 15 Conn. App. 696, 700–701, 546 A.2d 324 (1988). Concluding, as we do, that the court made no findings as to the use of the purported riverfront easement at the time of the 1960 severance, and that the record, in fact, discloses no such use, the plaintiff's claim of an implied easement must fail.

---