## ARTHUR W. UTAY *v.* G.C.S. REALTY, LLC
### (AC 22360)

Flynn, Bishop and West, Js.

Argued May 30—officially released October 1, 2002

*Elton B. Harvey III*, for the appellant (plaintiff).

*David A. Zipfel*, for the appellee (defendant).

*Opinion*

BISHOP, J. This appeal arises from a property dispute between neighbors over a boundary line that runs along a driveway. The plaintiff, Arthur W. Utay, claims that the court (1) made erroneous factual findings and (2) improperly failed to grant him an easement by implica-

tion over part of the driveway that is not included within his property boundaries. We affirm the judgment of the trial court.

Most of the facts are not contested. In 1979, the properties central to this dispute were owned in common by David Luchina and Lucy Luchina. At that time, the Luchinas had the property surveyed for the purpose of subdividing the land into three lots, one of which contained a house and a garage,[1] and all of which faced Main Street in South Windsor. On the survey, the plaintiff's property, which clearly contains the house and, more pertinently, the garage, is designated as lot 1, and the defendant's adjacent land, as lot 2. The survey, dated June 19, 1979, was filed in the South Windsor land records.

In 1996, the Luchina children, successors in interest to the property, had a second survey performed. That survey determined that the boundary line between lots 1 and 2, as drawn in the 1979 survey, was in error, and that the true boundary line bisected the garage and the driveway. The driveway connecting Main Street to the garage appears on neither the 1979 survey nor the 1996 survey, but the 1996 surveyor placed an iron pin in the middle of the driveway and a flagged nail on the garage to mark the boundary line. The second survey, dated July 12, 1996, was not filed in the land records.

On October 3, 1996, the Luchina children, acting though Peter Luchina, sought and received a variance from the South Windsor zoning board of appeals to create a jog in the boundary line between lots 1 and 2. The variance effectively ceded a small portion of land from lot 2 in favor of lot 1 around the encroaching garage so that the garage would remain entirely on the

---

[1] The second structure on the property variously is referred to by the court and the parties as a garage or a barn. For purposes of this opinion, we refer to it as a garage.

first lot. The variance did not include an adjustment of the boundary to include the entire driveway on lot 1. The variance was recorded in the land records on October 21, 1996.

Peter Luchina (grantor) retained Realtor Wayne L. Brewer to market lot 1, now known as 482 Main Street. On May 26, 1998, the property was listed for sale. The grantor gave a copy of the 1996 survey map, which included the variance and accurately reflected the dimensions of the property, to the Realtor, who placed it in the listing file. The multiple listing sheet issued by the Realtor's office described the property as a colonial home with a crushed stone driveway and a two car detached garage, without reference to the boundary line. On November 4, 1998, the plaintiff, using an agent from the same office as Brewer, entered into a contract with the grantor to purchase the property. On December 21, 1998, the grantor conveyed the property to the plaintiff.

On November 11, 1999, the grantor conveyed lot 2 to the defendant G.C.S. Realty, LLC. Lot 2 was an empty parcel, and the defendant thereafter began construction of a residence. Pursuant to town regulations, the defendant was required to place a silt fence around the zone of construction. Gregory Neary, the defendant's president, placed it up to the border of what he understood to be the defendant's property, which included a portion of the contested driveway. In the year between the plaintiff's purchase and the defendant's purchase of property from the grantor, the plaintiff had been using the driveway to access the garage. The silt fence partially obstructed the driveway and made entry into the far right portion of the garage more difficult.

The plaintiff subsequently brought an action to quiet title and for a determination of the existence of a prescriptive easement or, in the alternative, of an easement

by implication. The court found in favor of the defendant on all three counts. The plaintiff appeals on the ground that the court made factual errors and that those errors led, in part, to its failure to find an easement by implication.

I

The plaintiff first claims that the court made erroneous factual findings in support of its conclusion that there was no easement by implication over the defendant's land. Specifically, the plaintiff claims that the court improperly found that (1) the property had 185 feet of frontage on Main Street, (2) the plaintiff had knowledge, at the time of his closing, that a variance had been obtained in the recent past to revise the property boundaries, and (3) the plaintiff was aware at the closing that the garage was in poor condition and that the previous owner never had left vehicles in the garage.

We conclude, without deciding, that to the extent that there were errors in the court's factual findings,[2] those findings, in whole or in part, were not necessary to the court's determination that there was no easement by implication over the defendant's land. Neither the amount of property frontage on Main Street, nor the plaintiff's knowledge of the boundary revision and variance or his knowledge regarding the condition of the garage and the previous owner's storage of vehicles therein is relevant to the court's determination that an easement did not exist.[3] Accordingly, any errors in the disputed findings of fact were harmless.

---

[2] For example, the record shows that the property's frontage on Main Street is 152.61 feet, rather than 185 feet, as found by the court.

[3] In his principal brief, the plaintiff agrees that the amount of frontage on Main Street available to each parcel "has no bearing on the easement sought," that his "knowledge, or lack thereof [of the property lines], has no bearing on the existence of an implied easement" and that "the integrity of the [garage] should have nothing to do with the existence of an implied easement . . . ."

## II

The plaintiff also claims that the court improperly found that there was no easement by implication. We disagree.

The conveyance to the plaintiff made no mention of a driveway encroachment or a grant of easement and did not refer to any map or other instrument. It also is uncontested that the deed, as revised, was at the time of sale, and is presently, accurate as to the property's stated dimensions.

At the hearing before the court, the grantor testified that the deeds to the plaintiff and to the defendant stated precisely what he was conveying. The plaintiff claimed, however, that his real estate agent never advised him of the fact that the entire driveway was not part of his property. He also claimed that he did not see the boundary pin in the driveway or the surveyor's ribbon on the barn. The plaintiff further claimed that he had no knowledge of the correct property line until after the defendant had purchased the adjacent property.

Nonetheless, six months before the defendant's purchase, the plaintiff created a plot plan for submission to the town as part of his application to build a new structure on the property, and the plan clearly showed the boundary line running through the driveway.[4] In addition, the grantor testified that he had made it clear to the real estate agent where the boundaries were located and had given the agent a copy of the new survey that correctly outlined the boundary. Finally, with respect to the garage, the grantor testified that it was not in good condition and not likely to be maintained as a garage without repair or replacement. The

[4] The structure is used by the plaintiff as a workshop and to house his airplane.

plaintiff similarly noted in a letter to his real estate agent that the structural condition of the garage was poor.

The court concluded that the grantor had not intended to convey an easement to the plaintiff because the grantor had testified that the deeds clearly stated what he was conveying to each party. The court also found that there was no ambiguity in the boundaries delineated in the deed and that "[t]he fact that the driveway is not mentioned specifically in the deed does not make the deed ambiguous." The court reasoned that if an easement had been intended, the grantor could have redrawn the boundary line to include the entire driveway in the plaintiff's property when it obtained the variance for the jog around the garage.

The court further found that the plaintiff had failed to show by a preponderance of the evidence that the strip of land in dispute was reasonably necessary for the fair enjoyment of his property. The court relied on the fact that the plaintiff's parcel had an ample amount of frontage on Main Street. It considered the condition of the garage and the expectation of use.[5] It looked at photographs and maps of the disputed parcel and found that the plaintiff had "full and complete access to his property." It also found that he continued to access the rear of his property by using the partially obstructed driveway and a strip of land to its immediate left.[6] Indeed, the plaintiff himself had testified that nothing prevented him from using the garage, from widening

[5] See *Kenny* v. *Dwyer*, 16 Conn. App. 58, 65, 546 A.2d 937, cert. denied, 209 Conn. 815, 550 A.2d 1084 (1988), in which this court found that, because the plaintiff never had drawn water from a well, it was not reasonably necessary for him to access the well and, thus, no implied easement was created.

[6] See *Friedman* v. *Westport*, 50 Conn. App. 209, 215, 717 A.2d 797, cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998), in which the trial court found the fact that a driveway could be relocated on the property at issue persuasive to the determination of a lack of reasonable necessity to continue using a different driveway as a right-of-way.

the driveway by utilizing adjacent land to its immediate left or from moving the garage slightly away from the property line for better access. The court concluded that the plaintiff's concern regarding access to the far right portion of the garage was insufficient to support a finding of "reasonable necessity."

The finding of an easement by implication is a question of law. See *Gemmell* v. *Lee*, 59 Conn. App. 572, 576, 757 A.2d 1171, cert. denied, 254 Conn. 951, 762 A.2d 901 (2000). Our review is, therefore, plenary. *Torres* v. *Waterbury*, 249 Conn. 110, 118, 733 A.2d 817 (1999).

The law adopted in this state regarding the creation of easements by implication is well established. "Where . . . an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership . . . there arises by implication of law a grant or reservation of the right to continue such use." (Internal quotation marks omitted.) *Rischall* v. *Bauchmann*, 132 Conn. 637, 642–43, 46 A.2d 898 (1946), quoting *John Hancock Mutual Life Ins. Co.* v. *Patterson*, 103 Ind. 582, 586, 2 N.E. 188 (1885). Further, "in so far as necessity is significant it is sufficient if the easement is highly convenient and beneficial for the enjoyment of the portion granted. . . . The reason that absolute necessity is not essential is because fundamentally such a grant by implication depends on the intention of the parties as shown by the instrument and the situation with reference to the instrument, and it is not strictly the necessity for a right of way that creates it." (Citation omitted; internal quotation marks omitted.) *D'Amato* v. *Weiss*, 141 Conn. 713, 717, 109 A.2d 586 (1954).

The two principal elements we examine in determining whether an easement by implication has arisen are

(1) the intention of the parties, and (2) if the easement is reasonably necessary for the use and normal enjoyment of the dominant estate.[7] *Hoffman Fuel Co. of Danbury* v. *Elliot*, 68 Conn. App. 272, 282, 789 A.2d 1149, cert. denied, 260 Conn. 918, 797 A.2d 514 (2002). The intent of the grantor to create an easement may be inferred from an examination of the deed, maps and recorded instruments introduced as evidence. *Perkins* v. *Fasig*, 57 Conn. App. 71, 76, 747 A.2d 54, cert. denied, 253 Conn. 925, 754 A.2d 797 (2000). A court will recognize the expressed intention of the parties to a deed or other conveyance and construe it to effectuate the intent of the parties. *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 780, 687 A.2d 1270 (1997). In doing so, it always is permissible to consider the circumstances of the parties connected with the transaction. Id. Thus, if the meaning of the language contained in a deed or conveyance is not clear, the court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity. Id., 780–81.

We conclude that the deed provides a facially clear and accurate description of the plaintiff's lot. No mention is made of a driveway encroachment or an easement for any purpose. The court properly afforded great deference to the natural and ordinary meaning of the conveyance. We agree with the court that "[t]he fact that the driveway is not mentioned specifically in the deed does not make the deed ambiguous." Furthermore, the deed makes no reference to a map or other instrument.[8] We therefore conclude that the grantor did not

---

[7] The analysis applies where, as here, there is an apparently permanent and obvious servitude that is in use at the time of severance. In Connecticut, it no longer is requisite for the finding of an implied easement that the parcels derive from a common grantor. See *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 735 A.2d 798 (1999) (en banc) (abandoning unity of title doctrine).

[8] In *Fasig*, an easement by implication was found after an examination of the deed and a map, where the deed explicitly referred to the map, and

intend to create an easement by implication over the defendant's land when he conveyed the property to the plaintiff. Accordingly, there is no need to consider extrinsic evidence of such an intention.[9]

With respect to the second prong of the test for determining whether an implied easement exists, we conclude that such an easement is not reasonably necessary for the use and normal enjoyment of the plaintiff's property. See *Hoffman Fuel Co. of Danbury* v. *Elliot*, supra, 68 Conn. App. 282–83. "[A]n easement by implication does not arise by mere convenience or economy, but exists because of some significant or unreasonable burden as to access that demands the easement's presence." *Pender* v. *Matranga*, 58 Conn. App. 19, 26–27, 752 A.2d 77 (2000).

The court properly determined that the plaintiff had failed to establish that the strip of land in dispute was reasonably necessary for the fair enjoyment of his property. The plaintiff's parcel had an ample amount of frontage on Main Street. The plaintiff conceded that the condition of the garage was marginal and would require extensive repair or even replacement. See *Kenny* v. *Dwyer*, 16 Conn. App. 58, 64–65, 546 A.2d 937,

the map showed a road leading to an otherwise landlocked parcel. *Perkins* v. *Fasig*, supra, 57 Conn. App. 76–77; see also *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 735 A.2d 798 (1999); *Gemmell* v. *Lee*, supra, 59 Conn. App. 575. In *Gemmell* and *Bolan*, the court found that the reference in the deed to specific maps that showed the servitude in question was persuasive evidence of intent to create an implied easement. Here, the deed does not refer to a map, and the 1979 and 1996 survey maps that were introduced as evidence do not show the driveway.

[9] We note that the use of intent to find an implied easement long has been disfavored in Connecticut, largely because of the obvious statute of frauds problem, but also because the practical impact is to make land records less reliable. *Gager* v. *Carlson*, 146 Conn. 288, 292–93, 150 A.2d 302 (1959); 1 Restatement (Third), Property, Servitudes § 2.11, p. 154 (2000). Consequently, "implied grants of any interest in land are allowed to a very much more limited extent [in Connecticut] than in many other states." *Gager* v. *Carlson*, supra, 293.

cert. denied, 209 Conn. 815, 550 A.2d 1084 (1988). He has full and complete access to his property, and continues to access the rear of his property by using the partially obstructed driveway and the space to its immediate left. See *Friedman* v. *Westport*, 50 Conn. App. 209, 215, 717 A.2d 797, cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998). Although the plaintiff argues that he has difficulty maneuvering his car into the far right portion of his garage, that inconvenience does not rise to the level of a reasonable necessity, as that phrase has been used historically.

The plaintiff argues that the precedent established in *Rischall* v. *Bauchmann*, supra, 132 Conn. 637, is applicable because its facts are similar to those in the situation at hand. We do not agree. In *Rischall*, the owner of a tract of land at the intersection of two streets built a concrete walkway from the front of the house to the street. Id., 639. Thereafter, the walkway was used by the occupants of the house as their only means of access. Id. Several decades later, a bank foreclosed on the property and subdivided it into four plots. Id. The house was situated on one plot and the walkway on another. Id. The bank subsequently conveyed the plot with the house to the plaintiffs and the plot with the walkway to the defendant. Id., 640. Our Supreme Court upheld the trial court's conclusion that the deed from the bank to the plaintiff created an easement by implication over the existing walkway because the walkway was the occupant's only means of access to the street and was intended by the original owner to run with the house due to the parcel's unusual topography.[10] Id., 642–44.

Here, by contrast, the plaintiff has full and complete access to his property, including the garage. His primary

---

[10] The trial court's judgment was reversed and a new trial ordered, however, on the ground of an improper evidentiary ruling. *Rischall* v. *Bauchmann*, supra, 132 Conn. 645–46.

complaint is that he finds it difficult to maneuver his car into the far right side of the garage. He does not deny that he has access to the garage. We agree with the court that the inconvenience does not deprive the plaintiff of the reasonable use of that structure. Accordingly, an easement by implication is not reasonably necessary for the fair enjoyment of his property.

The circumstances here are far more similar to those in *Schultz* v. *Barker*, 15 Conn. App. 696, 697, 546 A.2d 324 (1988), in which the plaintiff sought to enjoin the defendant from blocking a right-of-way over the defendant's property that provided the plaintiff with access to her beachfront cottages. We concluded that the record reasonably supported the trial court's finding that "although an easement over the plaintiff's property would enhance the enjoyment of the defendant's property, it was not necessary to the fair enjoyment thereof"; id., 701; because the evidence indicated that the plaintiff had convenient access to the beach by means of alternate routes. Id. The same is true in the present case because the plaintiff conceded that nothing prevents him from using the garage, from widening the left side of the driveway or from moving the garage for improved access. Accordingly, we conclude, as in *Schultz*, that although an easement by implication over the defendant's land would be beneficial to the plaintiff, it is not reasonably necessary for the enjoyment of his property.

The judgment is affirmed.

In this opinion the other judges concurred.