******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CURTIS D. DEANE *v.* AMY DAY KAHN ET AL.
## (AC 39006)
## (AC 39011)

Alvord, Prescott and Kahn

*Syllabus*

The plaintiff brought this action seeking, inter alia, a judgment determining the rights of the parties as to a claimed right-of-way along a riverfront over certain real property of the defendant G, and a claimed riverfront easement by necessity and implication over certain real property of the defendant K. The properties of the plaintiff, G and K had been part of a large estate of riverfront property that previously was owned by W. In 1935, pursuant to the terms of a deed, W conveyed to H a fee simple interest in a portion of her estate lying directly on the river free of encumbrances, except that a right-of-way was reserved across the property "along the route now in use." Following several conveyances over the years, that property is now owned by G. In 1960, the eastern portion of W's estate was divided into two properties, and after several conveyances over the years, those properties are now owned by the plaintiff and K. The divided properties consisted of an upper portion near the main road and a lower portion along the river, and the upper and lower portions were separated by a very steep slope, which made access between them very difficult and virtually impossible for vehicles. The deeds in the chain of title of the properties now owned by G and K did not make reference to the 1935 right-of-way, and the deeds in the chain of title to the property now owned by the plaintiff did not mention the 1935 right-of-way reserved by W over the property now owned by G. The trial court concluded that the plaintiff had an easement by deed over G's property by virtue of the 1935 deed of conveyance by W and that he had an easement by necessity over K's property that arose in 1960 when the properties now owned by the plaintiff and K originally were divided into separate parcels and were conveyed separately. The trial court rendered judgment in favor of the plaintiff, and G and K filed separate appeals to this court, which reversed the judgment in part. Thereafter, on the granting of certification, the plaintiff appealed to our Supreme Court, which reversed in part this court's judgment and remanded the case to this court with direction to remand the case to the trial court for further proceedings on the plaintiff's claim of an easement by implication. On remand, the trial court rendered judgment in favor of the plaintiff, concluding that he had an implied easement over K's property and that, as a result of the implied easement, the easement by deed over G's property in favor of the plaintiff's property was not extinguished by the severance of the plaintiff's and K's properties. Thereafter K and her husband, who was also a defendant, and G filed separate appeals to this court. *Held* that there was sufficient evidence in the record to support the trial court's conclusion that an implied easement existed over K's property in favor of the plaintiff's property: on the basis of the circumstantial evidence presented, including numerous photographs of the subject properties, the trial court's observations from twice having walked the properties and the testimony of two witnesses, who the court found credible and who had intimate and prolonged knowledge of the uses related to the properties over the years, the trial court reasonably and logically could have inferred that the parties to the 1960 conveyance were aware of the historic right-of-way along the riverfront, that the use of the right-of-way continued at the time of the conveyance, that the parties to the conveyance had the requisite implied intent to create the subject easement and that the easement was reasonably necessary for the use and normal enjoyment of the plaintiff's property; moreover, this court rejected the defendants' claim that the trial court improperly considered, as a matter of law, evidence of the use of K's property other than the use that existed at or close to the time of the 1960 conveyance, as the defendants did not raise any evidentiary challenges before the trial court on remand or seek to limit the evidence that the court could consider in deciding

whether an implied easement existed, and our Supreme Court in the prior appeal in this matter concluded that this court had impermissibly narrowed the scope of evidence that was admissible as proof of a grantor's intent with respect to the existence of an easement by deed, and there was no indication that that holding did not extend to a court's consideration of an easement by implication; furthermore, there was no merit to the defendants' argument that because the parties to the 1960 conveyance expressly set forth in the deed a common driveway and mutual boundary easements, they necessarily would have also expressly set forth any other intended easement, including any easement necessary to access the lower portion of the plaintiff's property, as the fact that parties to the 1960 conveyance created express easements by deed in no way precluded the trial court from finding that an additional easement was created by implication, and the defendants failed to cite any binding authority in support of their argument to the contrary.

Argued September 19—officially released January 2, 2018

*Procedural History*

Action for, inter alia, a judgment determining the rights of the parties as to a right-of-way on certain real property of the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Hartford, where the named defendant et al. filed a counterclaim; thereafter, the matter was transferred to the Complex Litigation Docket and tried to the court, *Shortall, J.*; judgment in part for the plaintiff; subsequently, the named defendant et al. appealed to this court, which reversed in part the judgment of the trial court, and the plaintiff, on the granting of certification, appealed to our Supreme Court, which affirmed in part and reversed in part this court's judgment and remanded the case to this court with direction to remand the case to the trial court for further proceedings; thereafter, the court, *Hon. Joseph M. Shortall*, judge trial referee, rendered judgment for the plaintiff, from which the named defendant et al. and the defendant John Gorman filed separate appeals with this court. *Affirmed.*

*Lloyd L. Langhammer*, for the appellants (named defendant et al.).

*Kerry R. Callahan*, with whom, on the brief, was *Sean P. Clark*, for the appellant (defendant John Gorman).

*Wesley W. Horton*, with whom were *Brendon P. Levesque* and, on the brief, *F. Thor Holth*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. Since at least 2001, the parties in this case have been engaged in a lengthy legal dispute regarding abutting properties that sit along the bonny banks of the Connecticut River in Lyme. The defendants Amy Day Kahn, Robert Kahn, and John Gorman[1] appeal from the judgment of the trial court finding that an easement exists in favor of the plaintiff, Curtis D. Deane, over the parcels of real property owned by Amy Day Kahn (Kahn property) and Gorman (Gorman property). The defendants' principal claim is that the evidence was insufficient to support the court's ultimate legal conclusion that an easement by implication exists over the Kahn property and, correspondingly, that an easement by deed continues to exist over the Gorman property.[2] We affirm the judgment of the court.

The following facts and procedural history, much of which was set out in the prior appeal in this case, are relevant to the defendants' appeals. To aid the reader, we include the following visual representation of the area, which was constructed from a map entered into evidence at trial as plaintiff's exhibit 49.



"In the early 1900s, Harriet Warner owned a large estate of land along the shore of the Connecticut River in Lyme. The estate was shaped roughly like a triangle, with its base running along the riverfront on the south side of the estate, where the river flows from west to east. The estate was accessible from the northeast via Brockway's Ferry Road, a public road that ran from northeast to southwest along the upper left or northwest side of the estate. As the road approached the river, however, near the southwest corner of the estate, it split into two branches, one of which continued southwestward while the other turned sharply to the east and continued eastward, parallel to the river, part way across the south side of the estate. . . .

"The estate would later be divided into a series of parcels that the parties in the present case would come

to own. The three properties owned by the parties are contiguous, with the Gorman property to the west, the Kahn property in the middle, and the [plaintiff's property (Deane property)] to the east. . . . Common to all three properties is the private right-of-way at issue in the present case, which extends from the end of the eastward branch of Brockway's Ferry Road, and continues parallel to the river part of the way across the south side of the estate. In this action to quiet title, the plaintiff . . . claims that he has the right to access the southern, riverfront portion of his sloping property from the west, across: (1) [the Gorman property] . . . over which the plaintiff claims a right-of-way pursuant to [a] 1935 deed; and (2) [the Kahn property] . . . over which the plaintiff claims an easement by necessity [that arose in 1960]. . . .

"On January 19, 1935, Harriet Warner conveyed a fee simple interest in [the Gorman property] to Walter Hastings. Under the terms of Harriet Warner's deed to Walter Hastings . . . the tract conveyed to him was to be free of encumbrances, except that a [right-of-way] is reserved in perpetuity across said tract along the route now in use. The 1935 deed contained no other language describing the location, direction, dimensions, uses or purposes of the right-of-way so reserved, or of the route now in use along which it was to run. . . .

"In 1936, Harriet Warner conveyed the remainder of her estate to her children, Hester Warner and [Musa Warner] Caples. Although Harriet Warner reserved a life use of the property so conveyed for herself, her deeds to her daughters made no mention of the right-of-way across the Gorman property reserved in the 1935 deed. On December 30, 1936, Hester Warner and Caples split the property between themselves, Caples conveying the western portion of the property to Hester Warner and Hester Warner conveying the eastern portion of the property, including [what would become] the Kahn and Deane properties, to Caples.

"In 1938, the Gorman property was transferred by certificate of devise from the estate of Walter Hastings to William Hastings, whereafter, in 1945, it was conveyed by William Hastings to Kenneth Johnson. . . . No mention of the 1935 right-of-way was made in any of the above-described conveyances of the Gorman property.

"On February 8, 1955, Johnson conveyed the Gorman property to [Marion Srebroff and Charles Srebroff]. The 1955 deed from Johnson to the Srebroffs mentioned the right-of-way reserved by the 1935 conveyance for the first time since that date. It provided, more particularly, that the property so conveyed was subject: To a [right-of-way] reserved in [the 1935] deed recorded in Volume 51 at page 25 of the Lyme land records in perpetuity across the land above described as parcel 1 and along the route now in use. There has been no other reference to the 1935 reservation in any other deed in the chain of title by which the Gorman property

ultimately descended to Gorman from the Srebroffs
. . . .

"On July 6, 1960, Caples simultaneously conveyed a portion of her property that would later become the Kahn property to Marion Srebroff and an adjoining parcel directly to the east of it that would later become the Deane property to Charles Srebroff. The deed to Marion Srebroff created a common driveway easement and a mutual boundary easement to provide the Kahn property with access over the Deane property to and from Brockway's Ferry Road. . . . This deed did not mention the right-of-way at issue in the present case, though it did contain language stating that it was conveyed with the appurtenances thereof. . . .

"On January 14, 1970, Marion Srebroff conveyed the Kahn property to Frank [Heineman] and Denise Heineman . . . . On May 13, 1981, Marion Srebroff and her daughter, [Carole] Schmitt, who then jointly owned the Gorman property, granted the Heinemans a right-of-way over the riverfront portion of that property, along that strip of land which is the easterly exten[sion] of the ancient private dirt road, as it now lays, across the property. . . . In none of [the] deeds in the chain of title to the Kahn property, from Harriet Warner to Amy Day Kahn, is there any reference to the 1935 reservation. In all [but one] of them, however . . . the Kahn property is conveyed with the appurtenances thereof. . . .

"All conveyances of the Deane property were specifically made subject to the common driveway and mutual boundary easements created by Caples in favor of the Kahn property when she first separated the Kahn property from the Deane property and sold them respectively to Marion Srebroff and Charles Srebroff. In none of the deeds to the Deane property, however, is there any mention of the right-of-way reserved by Harriet Warner over what is now the Gorman property in 1935. In all of those deeds, however, the Deane property is conveyed with the appurtenances thereof.

"On August 20, 2001, the plaintiff filed this action seeking, inter alia, to quiet title to his alleged right-of-way across the Gorman and Kahn properties to access the lower portion of [the Deane property], and to enjoin the defendants from interfering with his quiet enjoyment and use of that right-of-way. . . .

"In a thorough memorandum of decision, the trial court concluded, inter alia, that the plaintiff has an easement over the Gorman property by virtue of the 1935 deed and an easement by necessity over the Kahn property, which arose in 1960 when . . . Caples, who then owned the eastern portion of [Harriet Warner's] former estate, which included both the Deane property and the Kahn property, divided those properties into separate tracts and conveyed them, respectively, to Charles Srebroff and Marion Srebroff . . . . Upon reaching the foregoing conclusions, the court went on to rule that the scope of the deeded easement over the Gorman property and the easement by necessity over

the Kahn property should be defined in identical terms, which it then described in great detail, specifying its location on the burdened properties, its dimensions and its scope, including both the purposes for which and the time and manner in which it could be used. . . . Although the trial court ruled in favor of the plaintiff with respect to two counts—namely, the count alleging the creation of an easement by deed over the Gorman property and the count alleging the creation of an easement by necessity over the Kahn property—it did not rule on the count alleging the creation of an easement by implication over the Kahn property.

"The defendants appealed from the judgment of the trial court to the Appellate Court, which concluded that the plaintiff failed to prove, either by the language of the 1935 deed or by the circumstances existing at the time of its execution, that the 1935 deed created an easement [by deed] appurtenant to Harriet Warner's property across the Gorman property and that the plaintiff failed to prove that he is entitled to an easement by necessity over the Kahn property, either by showing that his property would be landlocked without it, which it would not be, or by showing that the parties intended to create such an easement at the time of its alleged creation in 1960, based upon evidence of the necessity for or the use of the claimed easement at that time. . . . The Appellate Court, accordingly, reversed the judgment of the trial court in part. . . .

"The plaintiff petitioned for certification to appeal from the judgment of the Appellate Court. [Our Supreme Court] granted the plaintiff's petition for certification to appeal limited to the following issues: (1) Did the Appellate Court properly reverse the judgment of the trial court enforcing a right-of-way by deed on the ground that the plaintiff failed to prove its location or use?; and (2) Did the Appellate Court properly reverse the judgment of the trial court enforcing a right-of-way by implication or necessity on the ground that the plaintiff failed to prove what use was made of the right-of-way at the time the riverfront portion of the property became effectively landlocked? . . . The defendants raise[d] two alternative grounds for affirmance: (1) the easement by deed over the Gorman property was not appurtenant to the land; and (2) an easement by necessity over the Kahn property cannot be imposed unless the dominant parcel is landlocked and the easement connects the landlocked parcel to a public road." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Deane* v. *Kahn*, 317 Conn. 157, 160–65, 116 A.3d 259 (2015).

Our Supreme Court reversed in part and affirmed in part the judgment of this court. Id., 160. With respect to the existence of a deeded easement over the Gorman property, our Supreme Court agreed with the plaintiff that this court improperly had concluded that the plaintiff could have proven the location and use of such an easement only with evidence exclusively from the time

of the 1935 conveyance. Id., 165–66. The Supreme Court concluded as follows: "In the present case, the trial court's consideration of evidence of the location and use of the right-of-way before and immediately after the 1935 conveyance, including credible evidence of use of the well worn path in the 1940s and 1950s by Schmitt and Sutton, was not [improper]. Because the trial court properly considered this evidence, and because the determination of the scope of an easement is a question of fact that will not be overturned unless clearly erroneous . . . we conclude that there is sufficient evidence in the record to support the trial court's finding of the location and use of an easement by deed over the Gorman property." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 171. The Supreme Court also rejected the alternative ground for affirmance raised by the defendants, concluding that the same post-1935 evidence offered to establish the easement also established the appurtenance of the easement. Id.

Turning to the Kahn property, the Supreme Court first affirmed this court's decision that the plaintiff had failed to prove the existence of an easement by necessity over the Kahn property in favor of the plaintiff, albeit on the basis of the defendants' alternative ground, namely, "that an easement by necessity cannot be imposed unless the dominant parcel is landlocked and the easement connects the landlocked parcel to a public road." Id., 174.[3] The Supreme Court, however, reversed the Appellate Court's decision to reject outright the plaintiff's alternative ground for affirming the trial court's judgment, namely, that the trial court's factual findings were sufficient to support an easement by implication over the Kahn property.[4] Id., 178.

The Supreme Court considered anew whether there were sufficient factual findings in the record to support an easement by implication and reasoned as follows: "Our review of the record leads us to conclude that, *although the trial court made some factual findings that likely will support the plaintiff's claim for an easement by implication over the Kahn property*, such findings may merely be incidental to the judgment that the trial court rendered solely on the plaintiff's count of easement by necessity. We decline to surmise whether the trial court would have made any additional factual findings if it had rendered judgment on other counts of the plaintiff's complaint, especially in light of the fact that *this opinion clarified what evidence is probative of the parties' intent with respect to the scope and use of an easement*. We therefore reverse the judgment of the Appellate Court as to easement by implication and remand the case to that court with direction to remand the case to the trial court for further proceedings on that count of the plaintiff's complaint." (Emphasis altered.) Id., 183.

On remand, the trial court ordered the parties to submit briefs in support of their positions regarding the

existence of an easement by implication. The court determined that it was unnecessary for it to conduct any additional hearing or to consider additional evidence and instructed the parties to confine their discussion to the evidence that was presented at the original 2006 trial in this matter. The parties did not object to this procedure or ask for an opportunity to offer additional evidence, and each submitted a brief. On the basis of the evidence and the submissions of the parties, the court issued a memorandum of decision on March 1, 2016, finding in favor of the plaintiff and concluding that he had an implied easement over the Kahn property and that, as a result of that implied easement, "the easement by deed over the Gorman property in favor of [the plaintiff's property] was not extinguished by the severance of the Deane and Kahn properties in 1960."[5] These appeals followed.

I

We begin our discussion by setting forth the principles of law that guide our consideration of the principal claim raised by the defendants, including the appropriate standard of review. An easement by implication, also referred to as an implied easement, "is typically found when land in one ownership is divided into separately owned parts by a conveyance, and at the time of the conveyance a permanent servitude exists as to one part of the property in favor of another which servitude is reasonably necessary for the fair enjoyment of the latter property." (Internal quotation marks omitted.) *Sanders* v. *Dias*, 108 Conn. App. 283, 293, 947 A.2d 1026 (2008). Although related in concept, an easement by implication differs from an easement by necessity. See *Kelley* v. *Tomas*, 66 Conn. App. 146, 169 n.5, 783 A.2d 1226 (2001). "The difference between the two types of easements is that an easement by necessity requires the party's parcel to be landlocked, and an easement by implication does not require that the parcel be landlocked. An additional difference is that an easement by necessity does not require that the parcel have a preexisting use of an apparent servitude at the time of severance . . . whereas an easement by implication requires such an apparent servitude to be existing at the time of severance, and that the use of the apparent servitude be reasonably necessary to the use and enjoyment of the grantee's property." (Citation omitted.) Id., 170 n.5.

The creation of an easement by implication is governed by the often cited test set forth in *Rischall* v. *Bauchmann*, 132 Conn. 637, 642–43, 46 A.2d 898 (1946). "[If] . . . an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which, at the time of the severance, is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceed-

ings, there arises by implication of law a grant or reservation of the right to continue such use. In such case the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage in substantially the same condition in which it appeared and was used when the grant was made. . . . [I]n so far as necessity is significant it is sufficient if the easement is highly convenient and beneficial for the enjoyment of the portion granted. . . . The reason that absolute necessity is not essential is because fundamentally such a grant by implication depends on the intention of the parties as shown by the instrument and the situation with reference to the instrument, and it is not strictly the necessity for a right of way that creates it." (Citations omitted; internal quotation marks omitted.) Id.

"The two principal elements we examine in determining whether an easement by implication has arisen are (1) the intention of the parties, and (2) if the easement is reasonably necessary for the use and normal enjoyment of the dominant estate." *Utay* v. *G.C.S. Realty, LLC*, 72 Conn. App. 630, 636–37, 806 A.2d 573 (2002). In considering whether a grantor intended to create an easement, the court, in addition to examining the deed, maps and recorded instruments introduced as evidence, always may "consider the circumstances of the parties connected with the transaction." Id., 637. "With respect to the second prong of the test . . . [a]n easement by implication does not arise by mere convenience or economy, but exists because of some significant or unreasonable burden as to access that demands the easement's presence." (Citation omitted; internal quotation marks omitted.) Id., 638.

Turning to our standard of review in the present case, we note that, generally, "[t]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. [If], however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Cirinna* v. *Kosciuszkiewicz*, 139 Conn. App. 813, 818, 57 A.3d 837 (2012).

The circumstances in the present case, however, are somewhat unique and require a slightly different approach. The defendants do not claim that the court misstated the applicable law with respect to implied easements. Additionally, with one exception, they do not claim that the court made clearly erroneous factual findings or otherwise challenge the factual basis of the court's decision.[6] Rather, the defendants' primary claim

on appeal is that the court misapplied the applicable law to the subordinate facts in reaching its ultimate determination that an implied easement existed.

In other words, the defendants' claim is best understood as implicating the evidentiary sufficiency of the court's legal conclusion. We have applied the following standard when considering sufficiency claims in other civil cases and conclude that the same approach is appropriate under the present circumstances. If the appropriate standard of review is one of evidentiary sufficiency, we consider "whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court." (Internal quotation marks omitted.) *In re Shane M.*, 318 Conn. 569, 588, 122 A.3d 1247 (2015). With these principles in mind, we turn to whether the cumulative effect of evidence in the record supports the court's determination that an easement by implication exists.[7]

## II

In their respective appeals, the defendants each claim that the trial court improperly concluded on the basis of the factual record before it that the parties to the 1960 severance of the Deane and Kahn properties intended to create an easement by implication in addition to certain other easements expressly set forth by deed. Having reviewed the court's decision, however, we are convinced that the evidence relied upon by the court was sufficient to support its conclusion that the plaintiff met his burden of establishing by a preponderance of the evidence that an easement over the Kahn property was both implicitly intended by the parties to the 1960 conveyance and reasonably necessary for the use and normal enjoyment of the Deane property. Accordingly, we reject the defendants' claims.

As a preliminary matter, we reject the defendants' suggestion that the court improperly considered, as a matter of law, evidence of the Kahn property's use other than that which existed either at or closely around the time of the 1960 conveyance. First, the defendants did not raise any evidentiary challenges before the trial court on remand or seek to limit the evidentiary lens through which the court viewed whether an implied easement existed. Furthermore, our Supreme Court already held in the prior appeal in this matter that this court impermissibly narrowed the scope of evidence that was admissible as proof of a grantor's intent with respect to the existence of an easement by deed, and there is no indication that that holding does not extend to a court's consideration of an easement by implication. Certainly, to establish an easement by implication, the plaintiff has the burden of demonstrating a preex-

isting use of an apparent servitude at the time the property was severed into separate parcels. *Sanders* v. *Dias*, 108 Conn. App. 283, 293, 947 A.2d 1026 (2008). Such use may be established by direct evidence of that use by the grantor, but may also be established, more indirectly, by circumstantial evidence of the existence of a use both prior to and after the severance from which it reasonably may be inferred that the same use by the grantor existed at the time of conveyance and was intended to continue. The fact that the trial court here relied on such circumstantial evidence is not fatal to its legal conclusions.

Furthermore, we also must reject outright the defendants' legal argument that, because the parties to the 1960 conveyance expressly set forth in the deed a common driveway and mutual boundary easements, they necessarily would have also expressly set forth any other intended easement, including any easement necessary to access the lower portion of the Deane property. The fact, however, that parties to a deed created express easements by deed in no way precludes a court from finding that additional easements were created by implication. The defendants have not cited any binding authority in support of their argument to the contrary, and we are not persuaded by their reliance on authority from courts in other jurisdictions. Our Supreme Court rejected a nearly identical argument in *D'Amato* v. *Weiss*, 141 Conn. 713, 109 A.2d 586 (1954). The court in *D'Amato* stated: "It is true that the express grant of one or more easements in a deed *may* negate an intent to grant another easement *of a similar character* by implication. . . . It does not, however, *necessarily* do so. . . . The question is always what the intention of the parties was, as it can be gleaned from the deed *in the light of the attendant circumstances*." (Citations omitted; emphasis added.) Id., 718. Certainly, if express and implied easements concern different issues of access and different portions of the property, the existence of an express easement in the deed will have far less of a significance in evaluating whether the parties also implicitly intended a separate and distinct easement.

As stated in the relevant 1960 deed, the common driveway and mutual boundary easements were created to provide common access from the portion of the roadway running north of what is now the Kahn and Deane properties "for passage on foot and in vehicles and for the installation of public utility services for the benefit of the [conveyed] land." Those easements, therefore, benefit the upper portions of the conveyed property, but did nothing with respect to access to the lower, riverfront portions of the property, which the court found on the basis of its own observations during two site visits were all but inaccessible from the upper portions due to the steep slope of the land. On these facts, it was not unreasonable for the court to conclude that

the parties to the 1960 conveyance may have chosen to expressly set forth in the deed the newly created common driveway and mutual boundary easements and yet still implicitly intended the continuation of a long-standing practice of access over the lower riverfront portion of the properties by way of the easement over the Gorman property.

Finally, we turn to whether there was sufficient evidence to support the trial court's determination that an easement by implication existed over the Kahn property in favor of the Deane property. We conclude that the evidence before the court was sufficient to support both that the parties to the 1960 conveyance had the requisite implied intent to create such an easement and that the easement was reasonably necessary for the full enjoyment of the Deane property.

The trial court set forth the following facts in support of its determination that an easement by implication exists in the present case. First, on the basis of numerous photographs of the Deane and Kahn properties introduced at trial, as well as the court's own observations from twice having walked the site, the court found that "[e]ach property consists of an upper portion near to the road and a lower portion along the river, the portions being separated by a very steep slope, which makes access from the upper portion to the lower portion and the river exceedingly difficult. Moreover, access from the lower portion to the road via the slope and the upper portion of the property is virtually impossible, especially for vehicles. There is no evidence whatever that the configuration of these properties was any different in 1960 than it is today."

The court also set forth additional facts, taken from its prior decision in this matter, relative to whether the implied easement was "reasonably necessary for the use and enjoyment" of the plaintiff's property. In particular, the court stated: "[T]his is not a case where access to the lower portion from the upper portion of the Deane property is merely inconvenient. . . . Without direct vehicular access from the road [the plaintiff] has been and will continue to be unable to conduct ordinary maintenance of the lower portion of his property on a regular basis, to deal with damage to that portion caused by unusual events, such as a severe storm or flooding, to maintain his well or seawall or to construct a beach or boat dock on the river. . . . [I]n 1960, [Caples] was conveying to [Charles] Srebroff a tract of land, the lower portion of which along the riverfront was inaccessible to vehicular traffic from the upper portion due to a steep slope separating the two, thus precluding its reasonable and productive use and development without access to the road via the riverfront easement. Even access by foot was problematic due to the steepness of the slope." (Citation omitted; internal quotation marks omitted.) These findings, taken

together, are sufficient to establish that there was a "significant or unreasonable burden as to access" to the lower portion of the Deane property, and, that an easement along the riverside was needed to provide such access for the maintenance and enjoyment of the lower portion of the property below the slope.

Regarding its conclusion that such use of the property existed at the time of the 1960 conveyance and that it reasonably could be implied that the parties to the conveyance intended to create an easement continuing that use, the court relied on the following evidence. First, and most significantly, the court credited the trial testimony of two witnesses—Robert Sutton, the nephew of Harriett Warner and the cousin of Caples, and Carole Schmitt, the Srebroffs' daughter—whom the court described as having "intimate and prolonged knowledge of the uses to which these properties along the Connecticut River had been put."

The court found with respect to Sutton that he "has lived among these properties all his life" and that he had "crossed over [Caples'] property on his way to and beyond what is now the Deane property 'thousands and thousands of times' " beginning "in 1945, when . . . Caples owned them, and continu[ing] up to and beyond 1960, when she sold them to the Srebroffs." The court appears to have credited Sutton's testimony that "there were well-worn tracks across what is now the Kahn property for many years, evidencing the frequent and regular traffic over the property to, from and beyond what is now the Deane property" and that "the traffic across the Kahn property was not limited to foot traffic: on a regular basis stores in town delivered both fuel oil and groceries to a house previously located on the lower portion of the Deane property." Significantly, the court found that it was reasonable and logical to infer that "Caples would have known of this extensive use of her property by [Sutton], other members of her family and others during her time as owner and of the importance of this use in obtaining access from the lower portion of the property to the road."

With respect to Schmitt, the court found that "she was in residence with [the Srebroffs] in 1960 when the property was divided and sold to them by [Caples]." The court credited her testimony that, "[t]he reason the properties were divided . . . was to allow [Charles] Srebroff to sell off his portion of [Caples'] land, thereby providing the financial wherewithal to build a house on [Marion] Srebroff's portion for use by [Schmitt] and her family." The court found that at the time Schmitt lived on the Kahn property and the Heffernans lived on the Deane property, the area by the river generally was overgrown, but credited her testimony that "one area that wasn't overgrown was in the so called right-of-way that everybody is talking about." (Internal quotation marks omitted.) The court further credited Schmitt's

testimony that "the Heffernans used the established right-of-way over the Kahn property for the purpose of maintaining and improving the riverfront portion of their property, now the Deane property" and that on several occasions workmen presumably hired by the Heffernans came to clear debris. Those workmen passed over the property in their trucks. According to Schmitt, the right-of-way remained apparent through 1968 when she vacated the Kahn property.

The court viewed the testimony of Sutton and Schmitt as persuasive evidence that the use of the land at the time of the 1960 conveyances was "open, visible, continuous and necessary to the enjoyment" of the Deane property, and that same evidence warranted an inference "that the parties' intention in the division and conveyance of [Caples'] property was to preserve the established right-of-way."

The court further found that between 1955 and 1960, the Srebroffs, who were living on what is now the Gorman property, were well aware of the easement across the Gorman property because their deed mentioned "the right-of-way reserved by the 1935 conveyance." Further, they were aware of "the frequent traffic across their property and onto and through [Caples'] property." Finally, the court found that they "knew from their familiarity with the lay of the land along the shore that the portion of [Caples'] property conveyed to [Charles] Srebroff in 1960 required passage over the property conveyed to [Marion] Srebroff for its full use and enjoyment. This would have been of particular importance to them since it was their intention to sell [Charles] Srebroff's portion of the property, and ready access from its riverfront portion to the road would have enhanced its value." The court concluded that it reasonably and logically could deduce from those facts that "it was the Srebroffs' intent in 1960 that the historic right-of-way be preserved from [Charles] Srebroff's portion over [Marion] Srebroff's portion and further over what is now the Gorman property and on to the road."

After reaching its conclusion, on the basis of the evidence it recited, that the parties to the 1960 conveyance implicitly intended to create an easement across the lower portion of the Kahn property, the court set forth the following as supporting the reasonable necessity of such an easement. Between 1976 and 1986, "the plaintiff crossed over both the Kahn and Gorman properties without hindrance and brought in vehicles from the road via that route to improve and maintain the lower portion of his property"; the plaintiff crossed over the Kahn property for an additional fifteen years until the Kahns erected a fence in 2001; and [Amy Day] Kahn joined the plaintiff in his walks along the riverfront. The court, citing *Deane* v. *Kahn*, supra, 317 Conn. 170, reasoned that this postconveyance evidence was an example of the type of facts the Supreme Court contem-

plated as "bear[ing] a reasonable relation to what was considered reasonably necessary for [the conveyance's] use and normal enjoyment at the time of the conveyance . . . ." (Internal quotation marks omitted.)

Although it is clear from our review of the record that there is not overwhelming direct evidence of Caples' own use of the Kahn property to serve the lower portion of the Deane property precisely at the time of the 1960 conveyance, there, nonetheless, was evidence that such a use certainly existed both before and after the conveyance, as evidenced by the testimony of Sutton and Schmitt. We conclude that the court reasonably and logically inferred on the basis of the circumstantial evidence presented that the parties to the 1960 conveyance were aware of the historic right-of-way along the riverfront and that that use continued, in some form, at the time of the conveyance. It also was reasonable to infer that the parties intended to continue the use in the future because it was necessary for the proper enjoyment of the resulting severed parcels. We are convinced that there was sufficient evidence in the record to support the trial court's decision that an easement by implication existed across the Kahn property for the benefit of the Deane property, and, accordingly, we reject all of the defendants' arguments to the contrary.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Ellyssa Gorman and Pan Acres Nursery, LLC, were also named as defendants in this action, but they have not participated in the present appeal. Accordingly, we refer in this opinion to the Kahns and John Gorman collectively as the defendants and individually by name where appropriate.

[2] The Kahns separately claim on appeal that the issue of whether an easement by implication exists over their property was not properly before the trial court because the plaintiff failed to pursue and, thus, abandoned the allegations contained in count fifteen of the operative complaint, which, the Kahns assert, was the "only count that could be construed to deal with an implied easement." This abandonment argument, however, was never properly preserved for review because it was not raised or argued before the trial court on remand or as part of the prior appeal. As they acknowledged at oral argument before this court, the abandonment issue was not considered by our Supreme Court, which expressly remanded this matter to the trial court with direction to adjudicate whether the evidence in the record supported finding an easement by implication. "It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning . . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein." (Emphasis omitted; internal quotation marks omitted.) *Bruno* v. *Civil Service Commission*, 192 Conn. 335, 343, 472 A.2d 328 (1984). "Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed." (Citation omitted.) *Nowell* v. *Nowell*, 163 Conn. 116, 121, 302 A.2d 260 (1972).

Thus, the trial court was bound to follow the Supreme Court's remand order, and this court lacks any authority to conclude that the remand order was made in error. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court . . . [is] bound by [its] precedent"). If the Kahns believed that the claim of an easement by implication was abandoned at the pleading stage or at trial, they should have raised this with the Supreme Court through a

motion for reargument or reconsideration. No such motions were filed. Only our Supreme Court has the authority to correct perceived errors in its own decisions, including its remand orders. Accordingly, for all the reasons stated, we are not persuaded by the Kahns' additional claim of error.

[3] The Appellate Court had reversed the trial court's determination that an easement by necessity existed because the trial court failed to make findings regarding the "use of the right-of-way at the time of the 1960 conveyances" or "the existence of the need for vehicular access at the time of the purported creation of the easement by necessity." *Deane* v. *Kahn*, supra, 149 Conn. App. 83–84.

[4] This court rejected the plaintiff's alternative ground for affirmance in a footnote, concluding that because "the [trial] court made no findings as to the use of the purported riverfront easement at the time of the 1960 sever- ance, and that the record, in fact, discloses no such use, the plaintiff's claim of an implied easement must fail." *Deane* v. *Kahn*, 149 Conn. App. 62, 85 n.24, 88 A.3d 1230 (2014).

[5] This final conclusion is significant because the easement appurtenant created by the 1935 deed existed in favor of Caples' undivided property, which included both the current Kahn and Deane properties. "It is a well established principle that [if] an easement is appurtenant to any part of a dominant estate, and the estate is subsequently divided into parcels, each parcel may use the easement as long as the easement is applicable to the new parcel, and provided the easement can be used by the parcels without additional burden to the servient estate. . . . An easement is applicable to the new subdivision (1) if the easement directly abuts on the new parcel, or (2) *if the owner of the new parcel can reach the easement by traveling over intervening land over which the owner has a legal right of passage.*" (Citation omitted; emphasis added.) *Stiefel* v. *Lindemann*, 33 Conn. App. 799, 813, 638 A.2d 642, cert. denied, 229 Conn. 914, 692 A.2d 1211 (1994). Thus, when Caples' property was divided in 1960, the Kahn property would have retained the benefit of the appurtenant right-of-way over the Gorman property because it directly abutted that property, whereas the Deane prop- erty could retain the benefit only if it enjoyed some other legal right of passage over the intervening Kahn property, such as an easement by implica- tion. See *Deane* v. *Kahn*, supra, 317 Conn. 173–74.

[6] When asked at oral argument before this court whether they were claim- ing that any of the court's factual findings were clearly erroneous, the Kahns explained that, to the extent that the trial court had found that Caples had the intent to create an implied easement, they believed that that finding was clearly erroneous given that she also had created express easements as part of the 1960 conveyance. As we discuss later in part II of this opinion, we reject the premise of this argument and, thus, cannot agree that the court's finding of an implied intent was clearly erroneous.

[7] We acknowledge that we previously have stated that the finding of an easement by implication is a question of law over which our review is plenary. See *Utay* v. *G.C.S. Realty, LLC*, supra, 72 Conn. App. 636. Even if we were to apply a more exacting plenary standard of review in the present case, and thus make an independent determination regarding the existence of an implied easement, we nonetheless would affirm the judgment of the trial court.